## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| REGINALD C. GILBERT,<br>**Petitioner,** | §<br>§<br>§<br>§<br>§ | |
| | | **EP-20-CV-144-DB** |
| THOMAS BERGAMI, Warden,<br>**Respondent.** | §<br>§<br>§ | |

## MEMORANDUM OPINION AND ORDER

Reginald C. Gilbert, Federal Prisoner Number 71075-280, petitions the Court under 28 U.S.C. § 2241 to intervene in his behalf and direct Thomas Bergami, the Warden at his current place of confinement, to file a motion in his sentencing court for a compassionate release or, in the alternative, a reduction in his sentence. Pet'r's Pet. 2, 5, ECF No. 1. His petition is dismissed for the following reasons.

## BACKGROUND

Gilbert is a 33-year-old inmate serving a 36-month sentence imposed in the Midland/Odessa Division on August 7, 2018, after he violated the terms of his supervised release. *United States v. Gilbert*, 7:11-CR-016-DC-03 (W.D. Tex.), Order Revoking Supervised Release, ECF No. 357. He currently resides at the La Tuna Federal Correctional Institution in Anthony, Texas, with a projected release date of May 21, 2024. *See* www.bop.gov/inmateloc (search for Reg. No. 71075-280) (last visited July 13, 2021). He contends he suffers from asthma but provides no medical evidence to support his claim. Pet'r's Pet. 2, ECF No. 1. He suggests his medical condition makes him particularly vulnerable to COVID-19. *Id.*

Gilbert observes he asked Bergami to file a motion in the sentencing court for a compassionate

release or reduction in sentence (RIS) under 18 U.S.C. 3582(c)(1)(A) based on his concern about contracting COVID-19.  *Id.* at 1.   He attaches Bergami's response, dated May 13, 2020, denying his request:

> The [Bureau of Prisons (BOP)] is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates.  We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus.  However, your concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence.   Your RIS request is denied.

*Id.* at 7.  Gilbert argues Bergami abused his discretion when he denied the request.  *Id.* at 3.

He concedes he did not exhaust his administrative remedies—but he asks the Court to waive the requirement because, he believes, pursuing his claim further in the BOP review process would be futile—and the delay would cause him irreparable harm.  *Id.* at 4.

Gilbert moved the sentencing court in the Midland/Odessa Division on May 1, 2020, for a compassionate release under 18 U.S.C. 3582(c)(1)(A) due to his "underlying medical condition—asthma" and the COVID-19 pandemic.  *United States v. Gilbert*, 7:11-CR-16-DC-3 (W.D. Tex.), Def.'s Mot. 1, ECF No. 373.   His motion was dismissed because he had not yet exhausted his administrative remedies with the BOP.   Text Order.   Gilbert also petitioned this Court for injunctive and declaratory relief on May 13, 2020, pursuant to the All Writs Act due to the COVID-19 pandemic.  *Jones v. Bergami*, EP-20-CV-132-DB, Pet'rs' Pet., ECF No. 1.   His petition was denied because he had an adequate remedy in the Coronavirus Aid, Relief, and Economic Security Act (CARES Act).  *Id.*, Mem. Order & Op., ECF No. 2.

Gilbert now asks the Court "to reverse the draconian denial of administrative remedy by Warden Bergami, given petitioner's underlying medical condition and susceptibility to the coronavirus pandemic."  Pet'r's Pet. 5, ECF No. 1.

## APPLICABLE LAW

A writ of habeas corpus under 28 U.S.C. § 2241 provides the proper procedural vehicle to raise an attack on "the manner in which a sentence is executed." *Tolliver v. Dobre*, 211 F.3d 876, 877 (5th Cir. 2000).   However, "[h]abeas corpus relief is extraordinary and 'is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if condoned, result in a complete miscarriage of justice.' " *Kinder v. Purdy*, 222 F.3d 209, 213 (5th Cir. 2000) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)).   To prevail, a habeas corpus petitioner must show that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c).

During its initial screening of a § 2241 petition, a reviewing court accepts a petitioner's allegations as true. 28 U.S.C. § 2243; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). It also evaluates a petition presented by pro se petitioner under more a lenient standard than it would apply to a petition submitted by counsel. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).   But it must still find "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 556.   It must "award the writ or issue an order directing the respondent to show cause why the writ should not be granted, unless it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief."   Rule 4 of the Rules Governing § 2254 Cases in the United States District Courts (applicable to § 2241 petitions pursuant to Rule 1(b)).

## ANALYSIS

### A. Exhaustion

An initial issue which a court must address when screening a § 2241 petition is whether the petitioner has exhausted his administrative remedies. *Fuller v. Rich*, 11 F.3d 61, 62 (5th Cir. 1994) (per

-3-

curiam).   A petitioner seeking habeas relief must first exhaust all administrative remedies which might provide appropriate relief before seeking judicial review.   *Id.*; *Rourke v. Thompson*, 11 F.3d 47, 49 (5th Cir. 1993).   Exhaustion means "proper exhaustion," including compliance with all administrative deadlines and procedures.   *Cf. Woodford v. Ngo*, 548 U.S 81, 90 (2006) (discussing exhaustion under the Prison Litigation Reform Act).

The Federal Bureau of Prisons (BOP) uses a multi-tiered administrative remedy program "to allow an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a).   First, the inmate must attempt to resolve the issue informally with the prison staff.   *Id.* § 542.13(a).   Then, if the inmate cannot resolve the complaint informally, he must file a formal written administrative remedy request on a BP-9 form directed to the prison warden.   *Id.* § 542.14.   Any adverse decision by the warden must be appealed to the appropriate regional director by filing a BP-10 form.   *Id.* § 542.15(a).   The final step in the administrative review process is an appeal to the Office of General Counsel on a BP-11 form.   *Id.*   If an inmate does not receive a response within the time allotted, he may consider the absence of a response a denial at that level and proceed to the next level.   *Id.*   An inmate may seek relief in federal court only after he has exhausted all levels of the administrative review process.   *See Lundy v. Osborn*, 555 F.2d 534, 535 (5th Cir. 1977) ("Only after such remedies are exhausted will the court entertain the application for relief in an appropriate case.").

"Exceptions to the exhaustion requirement are appropriate where the available administrative remedies either are unavailable or wholly inappropriate to the relief sought, or where the attempt to exhaust such remedies would itself be a patently futile course of action."   *Fuller*, 11 F.3d at 62 (internal citations omitted).   Exceptions may be made only in "extraordinary circumstances," and the petitioner bears the burden of demonstrating the futility of administrative review.   *Id.*

-4-

Gilbert had the BOP administrative review process, as described above, available to address his claims.   He explains he asked Bergami to file a motion in the sentencing court for a reduction in his sentence under 18 U.S.C. 3582(c)(1)(A) due to the COVID-19 pandemic.   Pet'r's Pet. 1, 7, ECF No. 1. Gilbert further explains he did not pursue the matter after Bergami denied his request and concedes he failed to exhaust his administrative remedies.   *Id.* at 4.   If Gilbert had a meritorious claim, there is nothing to suggest that the BOP would not have afforded him relief through its administrative review process.   And if the BOP made an error concerning his request, the BOP should be given an opportunity to correct the error before Gilbert is permitted to seek judicial intervention.   Indeed, an attempt by Gilbert to exhaust through the BOP administrative review process would clearly not be a patently futile course of action.   While "[i]t is true that exhaustion . . . takes time, . . . there is no reason to assume that  . . . prison administrators . . . will not act expeditiously."   *Preiser v. Rodriguez*, 411 U.S. 475, 494–95 (1973).

Hence, the Court finds Gilbert has not exhausted and dismissal is warranted on this basis alone. *See Rivkin v. Tamez*, 351 F. App'x 876, 877–78 (5th Cir. 2009) (per curiam) (affirming dismissal of prisoner's § 2241 petition for failure to exhaust administrative remedies).   But even if Gilbert had properly exhausted, the Court would still not grant him § 2241 relief.

## B. Merits

Gilbert asserts Bergami "abused his discretion" by failing to follow the Attorney General's directive "to grant home confinement to inmates seeking transfer in connection with the COVID-19 pandemic."   Pet'r's Pet. 3, ECF No. 1.   He suggests Bergami failed to comply with the Attorney General's instruction "to consider the totality of the circumstances for each individual inmate, the statutory requirements for home confinement and additional eligibility factors."   *Id.*

Section 12003(b)(2) of the recently-enacted CARES Act granted the Attorney General discretion to place more prisoners in home confinement:

> During the covered emergency period, if the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau, the Director of the Bureau may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code, as the Director determines appropriate.

CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, March 27, 2020, 134 Stat 281.  Pursuant § 12003(b)(2), Attorney General William Barr issued a memorandum on April 3, 2020, instructing the BOP to maximize transfer to home confinement of "all appropriate inmates held at . . . BOP facilities where COVID-19 is materially affecting operations."  *See* "Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19" (April 3, 2020), available at https://www.justice.gov/file/1266661/download (last visited April 22, 2020).

Bergami applied the criteria for a compassionate release under 18 U.S.C. § 3582(c)(1)(A). Pet'r's Pet. 7, ECF No. 1.   He concluded Gilbert's "concern about being potentially exposed to, or possibly contracting, COVID-19 does not currently warrant an early release from your sentence."  *Id.*

A court applies a "two-step process" to determine whether an administrator abuses his discretion regarding a policy interpretation.  *Stone v. UNOCAL Termination Allowance Plan*, 570 F.3d 252, 257 (5th Cir. 2009).   First, the court determines whether the administrator's "determination was *legally correct*.  If so, the inquiry ends and there is no abuse of discretion."  *Id.* (emphasis added).  "In answering the first question . . . a court must consider: (1) whether the administrator has given the plan a uniform construction, (2) whether the interpretation is consistent with a fair reading of the plan, and (3) any unanticipated costs resulting from different interpretations of the plan."  *Gosselink v. Am. Tel. &*

-6-

*Tel., Inc.*, 272 F.3d 722, 726 (5th Cir. 2001).   If, however, "the court finds the administrator's interpretation was *legally incorrect*, the court must then determine whether the administrator's decision was an abuse of discretion." *Stone*, 570 F.3d at 257 (emphasis added).   "Three factors are important in this analysis: (1) the internal consistency of the plan under the administrator's interpretation, (2) any relevant regulations formulated by the appropriate administrative agencies, and (3) the factual background of the determination and any inferences of lack of good faith." *Gosselink*, 272 F.3d at 726. Additionally, a Court may find an administrator abuses his discretion when his decision is not " 'based on evidence, even if disputable, that clearly supports the basis for its denial.' " *Lain v. UNUM Life Ins. Co.*, 279 F.3d 337, 342 (5th Cir. 2002) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc)).   A court may make this determination only where "the plan administrator acted arbitrarily or capriciously." *Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc.*, 168 F.3d 211, 214 (5th Cir.1999).   "A decision is arbitrary only if made without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* at 215 (quotation marks omitted).   A court's " 'review of the administrator's decision need not be particularly complex or technical; it need only assure that the administrator's decision fall[s] somewhere on a continuum of reasonableness—even if on the low end.' " *Corry v. Liberty Life Assurance Co. of Boston*, 499 F.3d 389, 398 (5th Cir.2007) (quoting *Vega v. Nat'l Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir.1999) (en banc)).

As the Court noted above, Bergami applied the criteria for a compassionate release under 18 U.S.C. § 3582(c)(1)(A).   Pet'r's Pet. 7, ECF No. 1.   Section 3582(c)(1)(A) permits the BOP to file a motion in the sentencing court to reduce a term of imprisonment for extraordinary and compelling reasons.   18 U.S.C. § 3582(c)(1)(A).   Extraordinary and compelling reasons could include medical

conditions where "[t]he defendant is suffering from a terminal illness."   U.S. SENTENCING GUIDELINES MANUAL § 1B1.13 cmt. n.1 (U.S. SENTENCING COMM'N 2018).   Extraordinary and compelling reasons could also include situations where the defendant is suffering from a medical or physical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."   *Id.*

Gilbert does not assert he is suffering from a terminal illness.   He does not maintain he can no longer provide self-care within the prison environment.   He provides Bergami's response to his request which indicates the Warden applied the guidelines for compassionate release in § 3582(c)(1)(A) and concluded Gilbert's situation did not warrant his early release.   Gilbert provides no evidence which suggests Bergami's determination was legally incorrect—so, he provides no evidence of abuse of discretion.   Consequently, Gilbert's claim is without merit.

Furthermore, Gilbert does not allege he is in custody as a result of a constitutional violation. He seeks compassionate release or, in the alternative, a reduction in his sentence based solely on his medical condition and the threat to his health posed by COVID-19.   "A compassionate release request is not a matter of illegal or unconstitutional restraint."   *Figueroa v. Chapman*, 347 F. App'x 48, 50 (5th Cir. 2009).   Consequently, a petition under § 2241 is not the proper means by which Gilbert may obtain the relief he seeks.

## CONCLUSIONS AND ORDERS

Accordingly, the Court finds that Gilbert has not only failed to exhaust his administrative remedies but also has not shown he is in custody in violation of the Constitution or laws or treaties of the United States.   The Court concludes, therefore, that it appears from the face of his petition that he is not entitled to § 2241 relief.   The Court consequently enters the following orders:

-8-

**IT IS ORDERED** that Gilbert's "Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 to Overturn the Insufficiency of Warden Bergami's Interpretation of the Compassionate Release/Reduction of Sentence Procedure, et al., in light of A.G. Barr's April 20, 2020 Directive" (ECF No. 1) is **DISMISSED WITHOUT PREJUDICE** for failure to exhaust administrative remedies.

**IT IS FURTHER ORDERED** that the $5.00 filing fee is **WAIVED**.

**IT IS FURTHER ORDERED** that all pending motions, if any, are **DENIED** as moot.

**IT IS FINALLY ORDERED** that the Clerk shall **CLOSE** this case.

SIGNED this __14th__ day of July 2020.

DAVID BRIONES
SENIOR UNITED STATES DISTRICT JUDGE